United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JANUARY NICOLE VILLAREAL,

    Plaintiff,

    v.

CITY OF SAN JOSE, et al.,

    Defendants.

Case No. 22-cv-09152-VKD

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DOMINGUEZ'S MOTION TO EXCLUDE DR. RANDALL C. EPPERSON'S TESTIMONY AND OPINION**

Re: Dkt. No. 114

## I.    BACKGROUND

Plaintiff January Villareal filed this civil rights action pursuant to 42 U.S.C. § 1983 against the City of San Jose ("City") and former San Jose Police Officer Matthew Dominguez, alleging the violation of her rights under the Fourth Amendment of the U.S. Constitution, as well as several state law claims for relief. Dkt. No. 1. Specifically, Ms. Villareal claims that during her December 16, 2021 arrest on suspicion of driving under the influence, Mr. Dominguez inappropriately touched her as she sat handcuffed in the back of his patrol vehicle. Ms. Villareal asserts a claim against Mr. Dominguez for violation of her Fourth Amendment rights, as well as claims against the City and Mr. Dominguez for sexual battery, battery, negligence, and intentional infliction of emotional distress..[1] See Dkt. No. 1. Ms. Villareal seeks non-economic damages for

---

[1] The Court granted the City's unopposed motion to dismiss Ms. Villareal's claim under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), asserted against the City and "Supervisory Does." *See* Dkt. No. 29. Additionally, Ms. Villareal voluntarily dropped her seventh claim for relief for "[v]iolation of Cal[ifornia] Civ[il] Code § 52.1 and California [c]ommon [l]aw." *See* Dkt. No. 1 ¶¶67-72; Dkt. No. 147.

pain and suffering, as well as punitive damages.  *See id*.; *see also* Dkt. No. 144 at 2.[2]

Mr. Dominguez moves to exclude one of the opinions offered by Ms. Villareal's retained expert, Dr. Randall C. Epperson, a clinical neuropsychologist, regarding the cognitive decline Ms. Villareal claims she suffered as a result of the incident at issue.  Ms. Villareal opposes the motion. Dkt. No. 120.  Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants in part and denies in part Mr. Dominguez's motion to exclude Dr. Epperson's testimony and opinion on this point.

## II.    LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise," if the proponent of the testimony "demonstrates that it is more likely than not" that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Rule 702 was amended, effective December 1, 2023, "to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

Rule 703 further identifies the permissible bases of an expert's opinion testimony, including "facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid. 703.  Additionally, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, [the facts or data] need

---

[2] All pin cites to the parties' respective briefs refer to the page number appearing in the ECF header on court filings.

2

United States District Court
Northern District of California

not be admissible for the opinion to be admitted." *Id*. "But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id*.

Expert testimony is admissible under Rule 702 if it is both relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 597 (1993). The determination of whether expert testimony is admissible is a matter within the Court's discretion, *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999); *Gen'l Elec. Co. v. Joiner*, 522 U.S. 136, 141-43 (1997), and "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue," *Daubert*, 509 U.S. at 592-93. This "basic gatekeeping obligation" applies to all expert testimony, not just scientific testimony. *Kumho*, 526 U.S. at 147. The Court's inquiry is a flexible one, and "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id*. at 153. The proponent of expert testimony has the burden of proving admissibility. *Lust v. Merrell Dow Pharm., Inc*., 89 F.3d 594, 598 (9th Cir. 1996); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

## III.    DISCUSSION

Ms. Villareal intends to present Dr. Epperson's testimony regarding emotional harm, including post-traumatic stress disorder and cognitive decline Ms. Villareal says she experienced as a result of the incident with Mr. Dominguez. Mr. Dominguez does not dispute that Dr. Epperson is a qualified expert. Nor does Mr. Dominguez seek to preclude Dr. Epperson from testifying entirely. However, Mr. Dominguez argues that Dr. Epperson does not have sufficient data to reliably opine that Ms. Villareal has "Neurocognitive Disorder, unspecified (reduction in cognitive efficiency due to emotional stress and depression)" and that she experienced cognitive decline as a result of the alleged incident with Mr. Dominguez. *See* Dkt. No. 114 at 1-2, 28, 29. Accordingly, Mr. Dominguez moves for an order precluding Dr. Epperson from offering any such testimony or opinion at trial.

In his report, Dr. Epperson states that Ms. Villareal's "intellectual level has dropped from

3

United States District Court
Northern District of California

112 (high average) to 90 (bottom of average range, 25%)." *See* Dkt. No. 114 at 29. It appears to be undisputed that Dr. Epperson did not have data regarding Ms. Villareal's intellectual level prior the incident at issue. His report indicates that his finding regarding Ms. Villareal's pre-incident intellectual level is based on an average of indicators derived from data pertaining to other people with education levels and work experience similar to Ms. Villareal's. *See* Dkt. No. 114 at 21-22; Dkt. No. 120 at 4-6. Mr. Dominguez contends that Dr. Epperson cannot reliably opine that Ms. Villareal's intellectual level has declined as a result of the incident with Dr. Dominguez without a sound indicator of what her intellectual level was before the incident in question.

Ms. Villareal does not dispute that Dr. Epperson had no data or other information about Ms. Villareal's intellectual level or her cognitive functioning before the incident. *See generally* Dkt. No. 120. She argues, however, that Dr. Epperson's opinion is admissible because he relied on the Wechsler Test of Premorbid Functioning and the Wonderlic Test in his analysis. *See* Dkt. No. 120 at 3, 6; Dkt. No. 120-1, Ex. 1 (Dkt. No. 120-2) & Ex. 2 (Dkt. No. 120-3); *see also* Dkt. No. 114 at 10, 21-22. Ms. Villareal acknowledges that Dr. Epperson's assessments rely on indicators consisting of "the mean IQ of individuals with her education level (120) and work experience (113, 113, and 114)" as well as two assessment indicators—non-phonetically spelled English words (108) and English vocabulary (104)—that are "relatively resistant to deterioration." Dkt. No. 120 at 5. From these indicators, Dr. Epperson concluded that Ms. Villareal's pre-incident IQ was 112 and had dropped to 90 as a result of the incident. *Id.*

Whatever the utility of these two assessments may be in assessing intellectual level or cognitive functioning, Ms. Villareal has not established that Dr. Epperson's testimony regarding any change in her intellectual level, and the cause of any such change, is based on sufficient facts or data, is the product of reliable principles and methods, and reflects a reliable application of such principles and methods to the facts of this case. Fed. R. Evid. 702. Dr. Epperson's report discloses the assessments he conducted and their results, but it includes no explanation demonstrating that these one-time assessments of intellectual level may be used reliably to measure cognitive decline or to attribute the cause of any such decline to the incident in question. Ms. Villareal's opposition does not make this showing either. Accordingly, Mr. Dominguez's

4

United States District Court
Northern District of California

motion to exclude Dr. Epperson's testimony regarding cognitive decline is granted. However, the Court will not preclude Dr. Epperson from testifying about his assessment that Ms. Villareal has "Neurocognitive Disorder, unspecified," to the extent that testimony reflects his assessment of Ms. Villareal's *current* cognitive functioning. The Court understands Mr. Dominguez's motion does not challenge Dr. Epperson's assessment of Ms. Villareal's current intellectual level or cognitive functioning.

## IV.   CONCLUSION

Based on the foregoing, Mr. Dominguez's motion to exclude a portion of Dr. Epperson's testimony and opinions is granted in part and denied in part. Dr. Epperson is permitted to testify about his assessment of Ms. Villareal's *current* cognitive functioning. Dr. Epperson is not permitted to testify or offer opinions that Ms. Villareal experienced cognitive decline as a result of the alleged incident with Mr. Dominguez.

**IT IS SO ORDERED.**

Dated: April 10, 2026

Virginia K. DeMarchi
United States Magistrate Judge